Judge Carr,
delivered his opinion:
We gather from the bill, that Head brought two suits against Long, in the Superior Court of Law for Spottsylvania county: that, on the 17th day of October, 1819, orders were made in these causes, referring them to the ai’bitration of Briggs and Stevenson, (the counsel in the suits,) and to their umpire, if they could not agree. Under this order, several meetings were held by the arbitrators. On the 17th of October, 1820, another order was made in the causes, enlarging the submission to all matters in dispute between the parties. The arbitrators, not being able to agree, appointed Lewis their umpire. When this was done, we do not exactly discover from the record; but it wás certainly before the 20th of November, 1821. On the 23d of October, 1822, the arbitrators certify, under their seals, that, not being able to agree, they had appointed Lewis umpire; and on the 22d of October, 1822, the umpire awards, that Head shall pay to Long $ 138 50, with interest from the 12th of November, 1821, and costs of suit. On this award, judgment was entered for the defendant, by the Superior Court of Láw, on the 26th of October, 1822, for the sum awarded, interest and costs. The purpose of the bill before us, is to injoin this judgment, and set aside the award. It charges the arbitrators with excess of power, omissions, miscalculations, mistakes, and *129 misbehaviour. Muir, the only defendant who has appeared, pleads the award in bar, and answers, denying the charges of miscalculation, &c. Upon this answer, the injunction was dissolved; and the appeal to us, is from the order of dissolution. The bill does not place the applicaiion to equity, on the ground, that the charges against the arbitrators, are such as would not be heard in a Court of Law; but states, that plaintiff was prevented, by absence, from availing himself of them, before that tribunal.
If they were available there, and the plaintiff, without a good excuse, has failed to make his defence, we ought not to hear him; for, a party’should not be permitted by his own wanton negligence, to raise an equity which could otherwise have had no existence. It is considered settled doctrine, I believe, that whether the reference be by rule of Court, or under our statute, (which is taken, with some variation, from 9th and 10th Wm. 3, ch. 15th,) a -Court of Law, though it refuses to enter into the merits of an award, will take notice of legal objections on the face of it, or such as go to the misbehaviour of the arbitrators. Lucas v. Wilson, 2 Burr. 701; Chase v. Westmore, 13 East, 357.
Some of the objections at least, which are stated in the bill, are of this character. Why did not the plaintiff make them at law ? His excuse is, that being called by business to 'Richmond, about the time that the. Superior Court of Law would hold its session, he enquired of Mr. Briggs, whether the award would be returned to the next term, expressing his earnest wish to be present, when it should be returned; that Briggs told him, he was not certain that it would be returned; but, that it was exceedingly pressed for, and he was ready to act. He suggested, however, that application should be made to Stevenson. Head ap_ plied to him, but received no satisfaction ; whereupon he left the Court, and did not return, till the last day of the session; on which-day the award, (having been returned during the term,) was entered up as the judgment of the Court. It is obvious, in the first place, to remark, how *130 strange a course was taken to arrive at information. Head had known, for twelve months, that the arbitrators had disagreed and chosen an umpire. He must have known, t°°j that after this, they had nothing more to do; the business of making the award having devolved on the umpire. Why did he not apply to him, to know whether he would return his award during the term ? But, from the information he received, he ought surely to have concluded, that the award would be returned. The case had stood on the reference for more than two years, and Briggs told him that the award was exceedingly pressed for, and he was ready to act. If, then, he deemed his presence material, he ought, by no means, to have left the Court. But, why was his presence necessary? I cannot conceive. He does not state, that he had any witnesses to summon, any affidavits to take, any papers or documents to collect. In truth, we cannot but conclude, that he had none of these things to do; for, in the case before us, he has examined no witness; and, every paper filed to impeach the award, bears, on its face, that it is a copy from the original, filed in the law record. For what, then, should he have been present? Instructions to his counsel would have answered every purpose. Indeed, I think we may consider it fairly in proof, that the defence, now set up in equity, was actually made at law; for, Muir, in his answer, avers positively and responsively, that so far from the plaintiff’s having no opportunity of objecting to the award, in the Court of Law, counsel actually appeared for him, and did object; and, it was not till authorities were produced by the respondent’s counsel, and after a day’s consideration by the Court, that the award was received, and judgment entered on it. This, then, is an attempt, to bring before a Court of Equity, for revision, the same matter which has been tried at law; and, it was contended in the argument, that equity, having concurrent jurisdiction originally, was not ousted by the law trial. But, surely it is too late to stir this point. In Flournoy v. *131 Holcombe, 2 Munf. 34, (a case like this, of an award,) it is considered a point too well settled to need a reference to authorities, that equity cannot revise a decision of a Law Court; and, that where there is concurrent jurisdiction, and the Law Court first gets possession of the subject, equity is bound by its decision. In Ross v. Overton, 2 Hen. & Munf. 412, (another case of an award,) the same law is laid down, with a reference to a long list of cases decided in this Court. Doctrines so well settled, ought not again to be drawn into question.
But, suppose we give to the objections to this award, all the weight they would merit, considering them as never having been before the law Court, but brought originally before a Court of Equity. Could they avail to set aside the award ? I am clearly of opinion, that they could not. All our equity cases on this subject, (and there are very many of them,) go to establish this doctrine, “that the reasons for setting aside an award, must appear on the face of it, or there must be misbehaviour in the arbitrators, or some palpable mistake. ” The cases, in our own Reports, are too familiar to need quotation. But as there are many cases in the English books, which fully sustain, if they do not even go a step beyond ours, I have thought it might not be amiss to cite a few of them. In Walter v. King, 9 Mod. 63, the bill was to set aside an award, for palpable excess of damages, for, the plaintiff had goods of the defendant, to /. 7 10 only, and yet he was awarded to pay 361. Lord Macclesfield said, lie would not set aside the award, on account of any hardship therein, because the arbitrators were Judges of the parties’own choosing. Lord Hardwicke, in a variety of eases, declared that a bill to set aside an award, must be founded upon the fraud, corruption or misbehaviour of the arbitrators; that they were Judges of the parties’ own choosing; and therefore, they could not object against the award as an unreasonable judgment; and that whether it was rightfully or wrongfully determined, the parties were bound by it, and there would be no end *132 of controversies, if it were otherwise. Ives v. Metcalf, 1 Atk. 63; Lingwood v. Eade, 2 Atk. 504; Ridout v. Paine, 3 Atk. 494; Tittenson v. Peat, 3 Atk. 529. The exceptions or qualifications to this rule, are mentioned also in these decisions of Lord Hardwicke; for instance, misconduct in the arbitrator, or fraud in one of the parties. He was also inclined to extend relief to cases of palpable mistake as to figures, or of one thing or fact for another. But the mistakes, here meant, do not comprehend errors of judgment, in its fair exercise upon a subject. Thus, in Knox v. Simmonds, 1 Ves. jr. 369. Lord Thurlow observed, “ that a party to an award cannot come to have it set aside, upon the simple ground of erroneous judgment in the arbitrator; for, to his judgment they refer their disputes; and that would be a ground of setting aside every award. There must be something more, as corruption or gross mistake, either. apparent on the face of the award, or to be made out by evidence; and in case of mistake, it must be made out to the satisfaction of the arbitrator.” In Morgan v. Mather, 2 Ves. jr. 15, the Lords Commissioners Eyre, Ashurst and Wilson, express themselves strongly on the general doctrine of awards. Wilson says, “It would be a melancholy thing, if, because we differed from the arbitrators in points of fact, we should set aside awards. The only grounds for that, are, 1. That the arbitrators have awarded what was out of their power. 2. Corruption, or that they have proceeded contrary to the principles of natural justice, though there be no corruption; as if, without reason, they will not have a witness. 3. That they have proceeded upon a mere mistake, which they themselves admit. I am of opinion, that when any thing is submitted to arbitration, the arbitrator cannot award contrary to law,* *133 because that is beyond their power; for, the parties intend to submit to them only the legal consequences of their transactions and engagements.”
This case was afterwards brought up for a re-hearing, before Lord Loughborough. He heard the argument against the award, but stopped the counsel in support of it, saying, “ I have no authority to re-view the proceedings of the arbitrators. All the matters before them were within the compass of the submission. All the argument is upon error and mistake; but you have not stated corruption, misbehaviour or excess of power, which are the only three grounds I know, for setting aside awards.” After some further remarks, he concludes thus: “If parties litigant agree to refer the whole matter to Judges of their own choice, I cannot correct the error of their judgment; but, one of these three grounds must be made out. ” In Dick v. Milligan and Milligan v. Dick, (cross suits) 2 Ves. jr. 23, before the same Lords Commissioners, the suits arose out of partnership transactions, and an order of reference was made, which expressed, that the arbitrators were to take an account of all the dealings and transactions, in like manner as if the same had been referred to the master, and that the parties should be concluded and bound by the award, &e. The arbitrators awarded a general balance to Milligan, but set forth no particular items. The award was excepted to for this reason. Commissioner Eyre said, “ There is great difficulty in sustaining any exception, bringing at all into the consideration of the Court, any thing relating to matter of fact. Being referred to the judgment of arbitrators, it is referred to final judgment, where there is no imputation upon the conduct of the arbitrators. The matter of exception which is open upon the award, is, whether any thing illegal upon the face of it, has been done by them, and whether the terms of the submission have been pursued.” In the argument, counsel had compared the award to the report of a master. Commissioner Eyre says, “ There is this great difference be *134 tween them. An arbitrator is constituted Judge of the facts, without appeal; the master is only to prepare for the Court, who is really the Judge, and the master only the minister; whereas, in the other case, the arbitrator is the Judge, and not the Court. The Coui’t has divested itself of all judgment. This is the ease of all arbitrations in Courts of Law; and there is no distinction, as to that point, between arbitrators, in Courts of Equity and Law.” In Emery v, Wase, 5 Ves. 846, Lord Alvanley said, “that arbitrators, chosen by the parties, ever had, and he hoped, ever would have, both at law and in equity, such autho rity, that the award should not be overhauled, unless upon fraud, imposition, or gross mistake.” Since the time of Lord Eldon, there seems to have been few questions raised as to the power of relief, against the mistaken judgment of arbitrators. The question is considered entirely at rest. In Anderson v. Darey, 18 Ves. 449, Lord Eldon says, “ The rule as to mistake, is, that where there is clear and distinct evidence of mistake, the nature of it, and that it was made out to the satisfaction of the arbitrators, as to which Lord Thurlow insisted on having their affidavit, Courts both of law and equity will interpose; the one, by setting aside the award; the other, by refusing to make it a rule of Court.” These are some of the many cases in the English books. Most of them (and some which I have not noticed) are brought together, and commented on, with that ability for which he is so remarkable, by Chancellor Kent, in several cases reported by Johnson; particularly in Underhill v. Van Cortland, 2 Johns. Ch. Rep. 339; and though the decree, in this case, was reversed by the Court of Errors, 17 Johns. Rep. 405, that was upon a difference about the facts of the case, and does not touch the law.
In this case, the Chancellor introduces his re-view of the cases, with the following strong and apt remarks: “ The decision of arbitrators is the decision of a tribunal of the parties’ own choice and erection. It is a popular, cheap, *135 convenient and domestic mode of trial, which the Courts have always regarded with liberal indulgence. They have never exacted from these unlettered tribunals, this rusticum forum, the observance of technical rule and formality. They have only looked to see if the proceedings were honestly and fairly conducted, and if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators.” By many quotations, among which are several cases of this Court, the Chancellor also shews the remarkable co-incidence and harmony, on this subject, between the English law, the decisions in the various Courts of the United Stales, and the doctrines of the civil law. He closes this part of the case, with these remarks: “ In finishing this re-view of the most material Chancery decisions on awards, I think we may safely conclude, that the law is as well settled on this, as on any other subject whatever. The conclusiveness of the judgment of arbitrators has received the uniform sanction of the Court, for a series of ages. The rule is not now to be shaken or disturbed. It is founded on so much reason and public convenience, as not to be confined merely to the Court of Chancery, but to have met with the general approbation of mankind.”
The law of awards being thus conclusively settled, let us examine its application to the case before us. The award, is a simple judgment, that the plaintiff pay to the defendant so much money; no explanation added; none of the items of which the sum is composed; none of the grounds, principles or calculations, on which the award rests, are given, either in the award, or in any paper annexed to it. To the attempt made by the bill, to open the whole litigation again, the defendant pleads the award; and, by answering, denies the mistakes, Sic. charged on the arbitrators. To meet this plea and answer, there is not one tittle of evidence. Surely, there can be no hesitation in affirming the judgment of the Court below.
*136 It may seem that I have dwelt longer than necessary, on so plain a case; but as the argument was very latitudinous, assailing established principles, and contending for a power in Courts of Equity over awards, which would, in effect, place them on no better ground than the reports of commissioners, I thought that it might not be amiss, thus to re-trace and fortify the ground taken in our own books on the subject.
Judges Gkeen and Cábele,* concurred; and the order of dissolution was therefore affirmed.

 Note by Judge Carr.—Where, upon a general reference, the arbitrator meaning to deckle according to law, mistakes; the Court will set that right; but, if parties choose to refer a naked question of law to a person to decide that question between them, instead of having the decision of a Court, the Court will not interfere. Young v. Walter, 9 Ves. 364; Ching v. Ching, 6 Ves. 282.

 Judges Brooke and Coalter, absent.